## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **COASTAL LABORATORIES, INC.,** *et al.,* | * | |
| | * | |
| **Plaintiffs,** | * | **Civil Action No. RDB-20-2227** |
| v. | * | |
| **TARUN JOLLY, M.D.,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |

| | | |
|---|---|---|
| **TARUN JOLLY, M.D.,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Civil Action No. RDB-21-0137** |
| **COASTAL LABORATORIES, INC.** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

These consolidated cases involve competing claims of Patrick Britton-Harr ("Mr. Britton-Harr") and Dr. Tarun Jolly ("Dr. Jolly") and the corporate entities respectively owned and controlled by them. The dispute arises out of the purchase of two infectious disease testing laboratories in Arizona pursuant to a purchase agreement. The procedural history of these cases includes a prior consent of the parties to maintain monetary status quo until the resolution of this litigation. It also includes this Court's preliminary injunction ordering them

to do so, in light of the transfer of funds as to which there are security interests.  As a result of a series of hearings, Dr. Jolly contends that there has not been a maintenance of the status quo and Mr. Britton-Harr contends that any injunctive relief should be vacated.  For the reasons that follow, Mr. Britton-Harr and the corporate entities owned and controlled by him are directed to take certain steps to ensure the maintenance of the status quo and the motion to vacate injunctive relief is DENIED.

Dr. Jolly filed a Complaint on August 12, 2020 in the United States District Court for the Eastern District of Louisiana, asserting various claims against Defendants Coastal Laboratories, Inc. ("Coastal Labs"), as well as Britton-Harr Enterprises, Inc. ("BHE"), and Mr. Britton-Harr arising out of Coastal Lab's purchase of two laboratories in Arizona from Dr. Jolly.  *See Jolly v. Coastal Laboratories, Inc.*, Civ. No. 20:2230 (E.D. La. 2020); *see also* (RDB-21-0137, ECF No. 1.)  It is undisputed that Mr. Britton-Harr is the sole owner of both Coastal Labs and BHE.  (*See* RDB-21-0137, ECF No. 108-1 at 22-23 *SEALED*.)  Dr. Jolly alleges that Coastal Labs defaulted on its obligations under a promissory note by, among other things, failing to pay installments it owed under that note which Coastal Labs executed to purchase the labs from Dr. Jolly.  (*Id.*)  On November 12, 2020, Dr. Jolly filed a motion for a temporary restraining order, amended later that same day, requesting access to Coastal Labs' books and records in order to confirm that Coastal Labs had sufficient assets to pay damages for any judgment that might be entered against it.  (RDB-21-0137, ECF Nos. 26, 29.)  That request was denied by Judge Morgan of the Eastern District of Louisiana.  (RDB-21-0137, ECF No. 123.)  However, Judge Morgan allowed Dr. Jolly to amend his request for relief and granted expedited discovery on the issue.  (RDB-21-0137, ECF No. 86)

On December 4, 2020, Dr. Jolly filed the Second Motion for Preliminary Injunction, asking for certain "status quo" relief and affirmatively requesting that money be transferred from certain parties back to Coastal Labs or deposited into the registry of the court.  (RDB-21-0137, ECF No. 71.)  On December 15, 2020, Judge Morgan signed an Agreed Preliminary Injunction filed with the consent of both parties, which provided for some of the status quo relief Dr. Jolly requested.  (RDB-21-0137, Agreed Preliminary Injunction, ECF No. 93.)  The only remaining issue was whether certain funds transferred from Coastal Labs should be returned or otherwise secured in the registry of the court.  The parties took the expedited discovery relating to the relief requested by Dr. Jolly and filed briefs in advance of a hearing that was to be held on January 19, 2021, but the case was transferred to this Court on January 15, 2021 (RDB-21-0137, ECF No. 132), and therefore, such hearing never occurred.

Upon transfer of the case to this Court, the matter was consolidated with a suit filed by Coastal Labs and another company wholly-owned by Mr. Britton-Harr, AMSOnSite, Inc. ("AMSOnSite"),[1] against Dr. Jolly and other individuals as well as companies owned by Dr. Jolly and the other individually-named defendants.  (*See Coastal Labs. v. Jolly*, RDB-20-2227, ECF No. 37.)  On March 10, 2021, this Court held an audio motions hearing and heard arguments of counsel regarding Dr. Jolly's Second Motion for Preliminary Injunction (RDB-21-0137, ECF No. 71).  (RDB-20-2227, ECF No. 50.)  That same day, for the reasons set forth on the record, this Court issued a Memorandum Order (RDB-20-2227, ECF No. 49) granting Dr. Jolly's motion and ordering that Defendants to the transferred action, Coastal

---

[1] It is undisputed that AMSOnSite is wholly owned by Mr. Britton-Harr.  (RDB-21-0137, ECF No. 108 at 101 *SEALED*.)

Labs, BHE, and Mr. Britton-Harr, place $3,000,000 in the Registry of this Court, or post a $3,000,000 corporate surety bond in that amount by March 17, 2021. After granting two motions requesting an extension of time to comply with that Order (RDB-20-2227, ECF Nos. 51, 53), this Court held a telephone conference on the record on March 26, 2021, at which time the Court amended its March 10 Order. For the reasons set forth on the record, the Court reduced the amount required to be posted to $2,230,000 and again extended time for Mr. Britton-Harr and/or his wholly owned companies to post such bond until April 5, 2021 at 11:30 a.m. (RDB-20-2227, ECF No. 56.)

On April 5, 2021, this Court held an in-person hearing to address Mr. Britton-Harr's[2] continued failure to comply with this Court's Order (RDB-20-2227, ECF No. 49, modified by ECF No. 56. At that hearing, the parties continued to dispute the proper form for Mr. Britton-Harr's compliance with this Court's Order, as well as the propriety of the injunctive relief granted. Ultimately, this Court decided to treat Mr. Britton-Harr's continued arguments related to the preliminary injunction as a Motion to Vacate entry of the March 10 Order. On April 20, 2021, this Court held another audio motions hearing to address that oral motion. (RDB-20-2227, ECF No. 76.) Having heard arguments of counsel on numerous occasions and having reviewed the parties' several submissions on the matter, this Court is satisfied that its initial granting of Dr. Jolly's Second Motion for Preliminary Injunction (RDB-21-0137, ECF No. 71) was proper. Accordingly, for the reasons set forth on the record and as set forth below, the Motion to Vacate is DENIED. Mr. Britton-Harr individually or his wholly owned

---

[2] This Court's Order (ECF No. 49) specifically stated that Coastal Labs, BHE, or Mr. Britton-Harr could post the required amount in the court registry. Given it is undisputed that Mr. Britton-Harr is the sole owner of both Coastal Labs and BHE, this Court has treated Coastal Labs, BHE, and Mr. Britton-Harr's failure to comply with this Court's Order as a failure by Mr. Britton-Harr. (*See* ECF No. 68 at 22-23.)

companies are specifically directed to take steps to preserve the status quo as originally intended by the United States District Court for the Eastern District of Louisiana.

## BACKGROUND

On August 12, 2020, Dr. Jolly filed suit against Coastal Labs, BHE, and Britton-Harr, seeking to collect amounts allegedly due under a promissory note and guaranty, as well as recognition of the validity and enforceability of a Uniform Commercial Code ("UCC") financing statement and certain security interests.  (RDB-21-0137, ECF No. 1.)  On March 18, 2020, Dr. Jolly and Mr. Britton-Harr, on behalf of Coastal Labs, executed the Membership Interest Purchase Agreement (the "Agreement") by which Coastal Labs agreed to pay $3,000,000 to acquire Dr. Jolly's sole membership interest in two entities, Provista Health, LLC ("Provista") and Integra Molecular, LLC ("Integra").  (*Id.* ¶ 8; *see also* RDB-21-0137, Agreement, ECF No. 1-2.)  On March 18, 2020, the parties also signed a Secured Promissory Note and Pledge Agreement (the "Note"), by which Coastal Labs agreed to pay Dr. Jolly the $3,000,000 within one year of the execution of the Agreement.  (RDB-21-0137, ECF No. 1 ¶ 9; *see also* RDB-21-0137, Note, ECF No. 1-2.)  This Note, including the payment and performance in full of all the obligations of Coastal Labs thereunder, was secured by, among other things, all assets of Coastal Labs, Provista, and Integra,[3] as reflected in a UCC Financing Statement in favor of Dr. Jolly.  (RDB-21-0137, ECF No. 1 ¶ 14; *see also* RDB-21-0137, Financing Statement, ECF No. 1-3.)  The Agreement and the Note are each unconditionally and irrevocably guaranteed by BHE, one of several business wholly owned by Mr. Britton-

---

[3] By execution of the Agreement, Coastal Labs became the sole owner of both Provista and Integra.  (RDB-21-0137, ECF No. 1-2; RDB-21-0137, ECF No. 108-1 at 119 *SEALED*.)  As noted above, Coastal Labs is wholly owned by Mr. Britton-Harr.

Harr, who did not personally guarantee the Agreement and the Note.  (RDB-21-0137, ECF No. 1 ¶¶ 20, 22.)

The requirements of the Note were as follows.  First, the Note specified that monthly payments were due "on the fifteenth (15th) day of each month during the term of th[e] Note commencing on April 1, 2020, in an aggregate amount equal to Twenty-Five Percent (25%) of the Gross Collections for such prior month," with one final balloon payment of the outstanding principal and interest due on the maturity date of March 18, 2021.  (RDB-21-0137, ECF No. 1-2 at 13.)  The Note also required that Coastal Labs provide prompt written notice of the occurrence of "an Event of Default" or information known to Coastal Labs which could reasonably be expected to have a materially adverse effect on the business, operations or financial conditions of Coastal Labs or the ability of the company to perform its obligations under the Note.  (RDB-21-0137, ECF No. 1 ¶ 10; ECF No. 1-2 ¶¶ 11, 12.)  Coastal Labs further agreed to deliver sworn balance sheets and related statements of income and cash flow of Coastal Labs. as well as Provista and Integra, to Dr. Jolly.  (*Id.*)  The Note additionally required that Coastal Labs "not . . . dispose or otherwise transfer any of its material assets or any of the Lab Businesses or [Provista and Integra's] respective material assets, in each case whether now owned or hereafter acquired, except (i) any security interest in favor of [Dr. Jolly], and (ii) any liens by operation of law with respect to taxes that are not yet due and payable . . . ." (RDB-21-0137, ECF No. 1 ¶ 11; ECF No. 1-2 ¶ 12(g).)

Over the next few months following the execution of the Agreement and Note, relations between Mr. Britton-Harr and his companies and Dr. Jolly deteriorated.  On July 31, 2020, Coastal Labs, and another company wholly-owned by Mr. Britton-Harr, AMSOnSite,

filed suit in this Court against Dr. Jolly and others alleging tortious interference with business relations, tortious interference with economic relations, civil conspiracy, unfair competition, and fraud with respect to Coastal Labs' efforts to acquire medical testing laboratories to assist their infection control management program designed for nursing homes.  (RDB-20-2227, ECF No. 1.)  In the now operative Amended Complaint, Mr. Britton-Harr alleges, in part, that Coastal Labs had no "Gross Collections" in March, April, and May 2020 due to the nonperformance of a company, Z DiagnostiX, LLC ("ZDX"), which was allegedly supposed to supply certain management software.  (RDB-20-2227, Amended Complaint, ECF No. 13 at ¶ 46.)  Mr. Britton-Harr alleges that such nonperformance was part of a scheme by Dr. Jolly and his associates to sabotage Coastal Labs' business and steal its customers.  (*Id.* at ¶ 74.)  On November 23, 2020, this Court denied the motion of Dr. Jolly and his co-defendants to dismiss in that case.  (RDB-20-2227, ECF Nos. 21, 22.)

On August 12, 2020, Dr. Jolly filed his own suit against Defendant Coastal Labs, as well as BHE and Mr. Britton-Harr individually.  (RDB-21-0137, ECF No. 1.)   In his Complaint, Dr. Jolly alleges that Coastal Labs' actions and/or inactions have triggered several independent "Events of Default" under the terms of the Note and Agreement.  (*Id.* ¶ 24.) Specifically, Jolly alleges that Coastal Labs has: (1) failed to make payments on the Note; (2) improperly transferred material assets, including furniture, fixtures, and equipment of Coastal Labs and/or Provista and Integra; (3) failed to keep records concerning collateral as required; (4) failed to provide prompt written notice of any and all events of default; (5) failed to timely permit inspection of the required books and records; and (6) failed to notify Dr. Jolly of events

7

that could result in a material adverse effect on the business, operations, or financial condition of Coastal Labs or Provista and Integra.  (*Id.* ¶ 25.)

On November 12, 2020, Dr. Jolly filed a motion for a temporary restraining order, amended later that same day, requesting access to Coastal Labs' books and records in order to confirm that Coastal Labs had sufficient assets to pay damages for any judgment that might be entered against it.  (RDB-21-0137, ECF Nos. 26, 29.)  That request was denied by Judge Morgan of the Eastern District of Louisiana.  (RDB-21-0137, ECF No. 123.)  However, Judge Morgan allowed Dr. Jolly to amend his request for relief and granted expedited discovery on the issue.  (RDB-21-0137, ECF No. 86.)

On December 4, 2020, Dr. Jolly filed the Second Motion for Preliminary Injunction, asking for certain "status quo" relief and affirmatively requesting that money be transferred from certain parties back to Coastal Labs.  (RDB-21-0137, ECF No. 71.)  In his motion, Dr. Jolly alleges that through expedited discovery he uncovered evidence that suggests that Mr. Britton- Harr was transferring large amounts of funds in which Dr. Jolly had a security interest to other entities that Mr. Britton-Harr wholly owned and controlled, all in an attempt to make any judgment uncollectable.  (*See* RDB-21-0137, ECF No. 107.)  As detailed above, this suit stems from a $3,000,000 loan Dr. Jolly made to Coastal Labs, which was secured by all the cash contained in banks accounts held by Coastal Labs and Provista, as well as other collateral. (*Id.* at 5.)  Through discovery, Dr. Jolly uncovered what he contends to be "sham transfers" made out of Coastal Labs' and Provista's accounts to the accounts of other entities wholly owned by Mr. Britton-Harr.  (*Id.* at 11.)

Specifically, Dr. Jolly alleges that in the context of the deterioration of business relations between himself and Mr. Britton-Harr, as well as the negotiation and entry of an order preserving the status quo by the Louisiana court, Mr. Britton-Harr made large transfers from the Coastal Labs and Provista accounts to BHE as well as AMSOnSite and Coastal Management, Inc. ("Coastal Management"), all companies wholly owned by Mr. Britton-Harr. (*Id.* at 7-11; *see also* RDB-21-0137, ECF No. 108 at 101 *SEALED*; RDB-20-2227, ECF No. 68 at 40.)  These transfers included:

1. Three transfers from Coastal Labs' accounts to BHE between August 8, 2020 and November 12, 2020, totaling $280,000;

2. Three transfers from Provista's account to BHE between August 17, 2020 and August 25, 2020, totaling $197,000;

3. Twenty transfers from Coastal Labs' accounts to AMSOnSite between June 12, 2020 and September 24, 2020, totaling $2,239,003;

4. Fourteen transfers from Coastal Labs' accounts to Coastal Management between April 8, 2020 and October 19, 2020, totaling $2,186,000;

5. Four transfers from Provista's account to Coastal Management between August 27, 2020 and October 2, 2020, totaling $198,000.

(RDB-21-0137, ECF No. 107 at 7-11.)  Dr. Jolly alleges that in total, more than $5,100,003 in funds were transferred from Coastal Labs' and Provista's accounts.  (*Id.* at 11.)  Dr. Jolly continues to assert that none of the discovered transfers were made in the ordinary course of business or for legitimate business purposes and that the sole purpose for such transfers was to move collateral out of Dr. Jolly's reach in anticipation of a potential judgment on Dr. Jolly's claim for breach of the Note.  (*Id.*)  Dr. Jolly contends that despite claims that the transfers were payments for services and loans, the Defendants have been unable to produce invoices or work orders that reflect the services rendered; identify the names of any actual employees

who physically rendered such purported services; or correlate the total amounts transferred to the service rates memorialized in contracts between Coastal Labs and AMSOnSite, Coastal Management, and BHE.  (*Id.* at 12.)  For example, marketing services agreements between Coastal Labs and AMSOnSite and Coastal Management specified rates of only $4,500 per month for certain marketing services.  (*Id.*)

Mr. Britton-Harr does not contest that these transfers were made, however, he asserts that such transfers were made in the ordinary course of business.  He alleges that the payments are a series of payments for marketing and management services, as well as payments for undocumented loans.  (RDB-21-0137, ECF No. 126 at 5 *SEALED*.)  Mr. Britton-Harr asserts that Coastal Labs had no incoming cash upon its creation in November 2019, and that the company waited to pay off loans and make payments of various services rendered by BHE, AMSOnSite, and Coastal Management, instead prioritizing other obligations owed to parties other than Mr. Britton-Harr and his wholly-owned companies.  (*Id.* *SEALED*.)

On December 9, 2020, Judge Morgan of the Louisiana court held a conference call with the parties at which time they agreed to send the court a proposed consent injunction to address some or all of the issues in Dr. Jolly's request for a preliminary injunction prior to a subsequent telephone conference to be held on December 14, 2020.  (RDB-21-0137, ECF No. 87.)  On December 10, 2020, while the parties were negotiating the substance of that consent order, Coastal Labs transferred another $150,000 from its one of its accounts to BHE. (RDB-21-0137, ECF No. 120 *SEALED*.)  On December 14, 2020, the same day the parties were required to submit their proposed consent order to Judge Morgan, Coastal Labs transferred another $225,000 to AMSOnSite.  (*Id.* *SEALED*.)

10

On December 15, 2020, Judge Morgan signed the parties' Agreed Preliminary Injunction Order (RDB-21-0137, ECF No. 93) by which Coastal Labs, BHE, and Mr. Britton-Harr agreed to provide Dr. Jolly with certain financial information with respect to the Coastal Labs and Provista accounts in which he holds a security interest.  That Order also enjoined Coastal Labs, Provista, and Integra from making any distributions, payments, or other monetary transfers of any kind in any amount for any reason to Mr. Britton-Harr, BHE, or AMSOnSite, Coastal Management, or any other entity in which Mr. Britton-Harr has an equity or ownership interest or management role.[4]   (*Id.*)   The Order also stated that regarding payments to entities other than those listed, Coastal Labs and the other companies were prohibited from making (1) any distribution, payment, or other monetary transfer of more than $25,000, except for legal fees, rent, insurance, and medical/laboratory supplies, or (2) more than one transfer under $25,000 to the same or related entities within a 72-hour period. (*Id.*)   Finally, the Order stated the Coastal Labs, BHE, and Mr. Britton-Harr were enjoined from disposing, destroying, transferring, or otherwise encumbering Dr. Jolly's collateral as defined by the UCC Financing Statement.  (*Id.*)

The parties did not come to an agreement on the issue of whether money transferred out of the Coastal Labs and Provista accounts should be returned to those accounts or otherwise secured.  This case was transferred to this Court before Judge Morgan could rule on the issue.  On February 22, 2021, Dr. Jolly's counsel submitted a request for a hearing on

---

[4] From the extensive proceedings on this matter in this Court, the record now reflects that another corporation in which Mr. Britton-Harr has such equity or ownership is his residence in Annapolis, Maryland.  That personal residence is owned by Tombstone Holdings, Inc., the stock of which is owned by Mr. Britton-Harr and his wife.  (*See* RDB-20-2227, ECF Nos. 65, 76.)  Furthermore, Mr. Britton-Harr has admitted that he did not have a personal bank account until September of 2020, and has utilized business accounts for any personal expenses.  (RDB-20-2227, ECF No. 68 at 15.)

the remaining issue of whether Coastal Labs, BHE, and Mr. Britton-Harr should be required to deposit the allegedly improperly transferred funds into the court's registry. (RDB-20-2227, ECF No. 40.) Upon review of the memoranda submitted by the parties in the Eastern District of Louisiana (RDB-21-0137, ECF Nos. 107, 113 *SEALED*, 119, 126 *SEALED*), and having heard arguments on counsel on the matter (ECF No. 20-2227, ECF No. 50), this Court held on March 10, 2021 that Dr. Jolly should be granted his requested relief to ensure the maintenance of the status quo in this matter pending the resolution of the parties' claims. (RDB-20-2227, ECF No. 49.) Accordingly, this Court ordered that Coastal Labs, BHE, or Mr. Britton-Harr individually must place $3,000,000 in the Registry of this Court or post a $3,000,000 corporate surety bond in that amount. (*Id.*) On March 26, 2021, this Court modified its original order, ordering that the amount required to be posted be reduced to $2,230,000 on the basis of alleged payments made by Coastal Labs under the Note and equipment allegedly owned by Coastal Labs being held as collateral by Dr. Jolly. (RDB-20-2227, ECF No. 56.) After numerous hearings and calls related to continued noncompliance with such Orders, this Court held on April 20, 2021 that entry of the March 10 Order was appropriate, and that the parties Mr. Britton-Harr, Coastal Labs, BHE, AMSOnSite, or any entity owned or controlled by Coastal Labs, BHE, AMSOnSite, or Mr. Britton-Harr individually, will be required to place $2,230,000 cash in the Registry of this Court or post a $2,230,000 corporate surety bond in that amount, or otherwise secure $2,230,000 in funds to satisfy any judgment potentially entered in this case.

## STANDARD OF REVIEW

The standard for granting a motion for preliminary injunction is defined under Federal Rule of Civil Procedure 65(b).  *See Montgomery v. Housing Authority of Baltimore*, 731 F. Supp. 2d 439, 441 (D. Md. 2010).  In determining whether to issue a preliminary injunction, the Court must follow the test set forth by the U.S. Supreme Court in *Winter v. Natural Res. Def. Council, Inc.,* under which the "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  555 U.S. 7, 20 (2008) (internal citations committed); *accord. League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 236 (4th Cir. 2014); *Int'l Brotherhood of Teamsters v. Airgas, Inc.*, 239 F. Supp. 3d 906, 912 (D. Md. 2017).  An injunction "is not granted as a matter of course, and whether to grant the injunction remains in the equitable discretion of the [district] court even when a plaintiff has made the requisite showing." *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) (internal citations omitted).

## ANALYSIS

This Court first notes that it has authority to grant the relief requested, namely, to seize property to enforce a preliminary injunction under Rule 64 of the Federal Rules of Civil Procedure.  "A preliminary injunction is a provisional remedy issued prior to final disposition of the litigation. Its function is *to preserve the status quo* and to prevent irreparable loss of rights prior to judgment."  Judge Virginia A. Phillips & Judge Karen L. Stevenson, *Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial*, Ch. 13-A (April 2021 update) (citing *Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam)).  The purpose of such equitable relief is "not to conclusively determine the rights of the parties" but to "balance the equities

as the litigation moves forward." *Id.* (citing *American Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 4 (1st Cir. 1997)); *U.S. Philips Corp. v. KBC Bank N.V.* 590 F3d 1091, 1094 (9th Cir. 2010)). "Crafting a preliminary injunction is an exercise in discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *See Winter*, 555 U.S. at 20.

As the U.S. Court of Appeals for the Fourth Circuit held in *U.S. ex rel. Rahman v. Oncology Associates*, under Rule 64 plaintiffs may invoke whatever remedies are provided under federal law or the law of the state in which the federal court is located "for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action." 198 F.3d 489, 499 (4th Cir. 1999) (citing Fed. R. Civ. Proc. 64); *see also Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552 (9th Cir. 1992); *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521 (11th Cir. 1994)). Rule 64 "provides for the adoption of 'all' state remedies providing for the seizure of property . . . including not only attachments but also 'other corresponding or equivalent remedies.'" *U.S. ex rel. Rahman*, 198 F.3d at 500. In *U.S. ex rel. Rahman*, Fourth Circuit therefore turned to Maryland law to determine the propriety of this Court's award of an injunction granting the United States' request to freeze the assets of the defendants pending trial in that case. The Court found that Maryland law "recognizes a 'prejudgment attachment type injunction.'" *Id.* at 501 (citing *Teferi v. DuPoint Plaza Assocs.*, 551 A.2d 477, 481 (Md. Ct. Spec. App. 1989)). As the Fourth Circuit explained,

> In *Teferi*, the trial court granted an employer's motion for an interlocutory injunction preventing an employee suspected of embezzlement from transferring or otherwise disposing of his assets prior to final judgment. The court upheld this injunction based on the substantial likelihood that fraud was committed by the defendant and that the assets were fraudulently obtained, and the probability that the defendant would dispose of assets before judgment.

14

*Id.* (citing *Teferi*, 551 A.2d at 481-82).  The Court noted that Rule 64 therefore authorized the district court to enter the preliminary injunction freezing assets.  *Id.*

The Fourth Circuit upheld this Court's order granting a preliminary injunction in that case which prohibited the defendants "from selling, transferring, or assigning any of their assets outside the ordinary course of business."  198 F.3d at 496.  In *U.S. ex rel. Rahman*, the Fourth Circuit specifically addressed the Supreme Court's ruling in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), in which the Court held that "the general equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions solely at law."  *Id.*  Relying on the U.S. Supreme Court's decision in *Grupo Mexicano*, as well as in *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212 (1945) and *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), the Fourth Circuit found that "when a plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets," a district court "may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested."  *Id.* (emphasis added).

Essentially, Dr. Jolly requests maintaining the status quo as anticipated in the earlier order of the U.S. District Court for the Eastern District of Louisiana.  Prejudgment attachment of assets, as noted by the Fourth Circuit, is permitted under Maryland law.  *U.S. ex rel. Rahman*, 198 F.3d at 496 (citing *Teferi*, 551 A.2d at 481.)  Therefore, this is a proper remedy sought under Rule 64(a).  Additionally, given Dr. Jolly alleges a security interest in the accounts of Coastal Labs and Provista on the basis of the Note applicable in this case, *Grupo Mexicano* does not limit this Court's authority to grant the requested relief.  Further, as noted above, the

15

parties themselves entered into the Agreed Preliminary Injunction, attempting to preserve the status quo in this case.  This Court has the authority to take equitable action to enforce and maintain that status quo, and therefore turns to analysis of the factors under Rule 65 for granting such injunctive relief.

### A.  Irreparable Harm

Dr. Jolly asserts that the requested injunction is proper in light of the circumstances, as "[c]ourts have routinely [held] that irreparable harm is established when it is shown that the offending party will dispose of whatever assets he might have that would enable him to pay a judgment unless he is prevented from transferring or disposing of assets sufficient to pay a judgment." (ECF No. 107 at 21 (citing, *inter alia*, *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994)).  In *Hughes Network*, the Fourth Circuit noted that in cases where the "harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable."  *Id.* (citing *Morton v. Beyer*, 822 F.2d 364, 371-72 (3d Cir. 1987) and *Foxboro Co. v. Arabian Am. Oil. Co.*, 805 F.2d 34, 36 (1st Cir, 1986)).  However, the Court also noted that "extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction," and found that such extraordinary circumstances include cases "where the moving party's business cannot survive absent a preliminary injunction or where '[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.'"  *Id.* (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)); *see also Appalachian Bible Coll., Inc. v. Foremost Indus.*, No. 5:16-cv-06781, 2016 WL 4204556, at *2 (S.D.W. Va. Aug. 9, 2016) (citation omitted) ("[E]xtraordinary circumstances, including the

risk that a defendant may become insolvent before a final judgment is awarded, can justify preliminary relief.").

The undisputed record in this case shows that more than $5,000,000 in funds were transferred from Coastal Labs' and Provista's accounts into the accounts of other entities entirely owned by Mr. Britton-Harr between August and November of 2020.  Based on documentation provided to this Court, it appears that more than $3,600,000 of those funds were transferred after Dr. Jolly filed suit against Mr. Britton-Harr and his wholly owned companies.  As a result of these transfers, at the time Dr. Jolly submitted his Pretrial Memorandum to the Eastern District of Louisiana, it was shown that Coastal Labs' accounts contained only approximately $1,500,000 in total assets. (RDB-21-0137, ECF No. 119 at 11.) At the hearing on March 10, 2021, Dr. Jolly's counsel updated the Court on the status of the Coastal Labs and Provista accounts: in accordance with the Agreed Preliminary Injunction, Coastal Labs had been providing Dr. Jolly with bank statements on a monthly basis, and the statements for January 2021 show that in all of three of Coastal Labs' accounts and Provista's one account there was less than $100,000, and none of the deposits into those accounts individually were worth more than a total of $35,000.  (RDB-21-0137, ECF No. 68 at 14.)

According to Dr. Jolly, Mr. Britton-Harr's transfers were made "for the sole purpose of moving the collateral out of Jolly's reach in anticipation of a forthcoming judgment." (RDB-21-0137, ECF No. 107 at 21.)  Dr. Jolly asserts that Mr. Britton-Harr's further transfers from Coastal Labs' account of $150,000 to BHE on December 10, 2020, and $225,000 to AMSOnSite on December 14, 2020, are evidence of Mr. Britton-Harr's bad faith and support Dr. Jolly's entitlement to his requested relief.  (RDB-21-0137, ECF No. 119 at 2.)  The

December 10 transfer was allegedly made during the parties' court-ordered negotiation with respect to the Agreed Preliminary Injunction, and the December 14 transfer was allegedly made after Mr. Britton-Harr's counsel had filed the proposed consent order with the Eastern District of Louisiana.  (*Id.* at 1 (citing RDB-21-0137, ECF No. 120 *SEALED*).)

In his Opposition to Dr. Jolly's motion, Mr. Britton-Harr asserted that Dr. Jolly had not and could not show that Coastal Labs was insolvent in order to show irreparable harm. (RDB-21-0137, ECF No. 119 at 12 *SEALED*.)  As Mr. Britton-Harr alleged, "Coastal [Labs] has met its liabilities on the year (other than disputed money owned to [Dr. Jolly]), including paying back over $1.3 million in loans," and noted that the company "had a net profit of $232,251.52 (an over one hundred thousand dollar increase since the previous month) through December 23 and has over $740,000 in receivables from Medicare and Medicaid and over $555,000 in receivables from private insurance companies that it expects in 2021."  (*Id.* at 12-13 *SEALED*.)  Yet, these amounts are insufficient to cover a potential $3,000,000 judgment. Indeed, Mr. Britton-Harr's counsel stated in correspondence with this Court "Coastal [Labs] does not possess $3 million to deposit into the Court's registry."  (RDB-20-2227, ECF No. 55.)  Since this Court's March 10 Order, Mr. Britton-Harr's counsel has continued to represent that they have been unable to secure a corporate surety bond in even the reduced amount of $2,230,000 on behalf of Coastal Labs.  (*See e.g.*, RDB-20-2227, ECF No. 61.)  As noted by Dr. Jolly's counsel in correspondence filed with this Court and in this Court's numerous proceedings on this matter, Mr. Britton-Harr's counsel continued to assert that Coastal Labs was unable to secure the surety bond.  Yet, this Court specifically noted in the March 10 Order and on the record on March 12, 2021, that any of the three Defendants, Coastal Labs, BHE,

or Mr. Britton-Harr individually, could post the bond.  (RDB-20-2227, ECF Nos. 49, 69.)  It is not clear whether Mr. Britton-Harr and his counsel have truly used their "respective financial wherewithal to attempt to comply with this Court's order."  (RDB-20-2227, ECF No. 59.)  On the undisputed record in this case, this Court is entirely satisfied that Dr. Jolly has demonstrated irreparable harm as required to receive his requested injunctive relief.

### B. Likelihood of Success on the Merits

As noted above, to qualify for a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits[.]"  *Winter Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The plaintiff "must make a clear showing that he is likely to succeed at trial,'" but the standard does not require "a 'certainty of success.'"  *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013)).  "A district court's determination that such a showing has been made is best understood as a predication of a probable, but necessarily uncertain, outcome."  *Smyth ex. rel. Smyth v. Rivero*, 282 F.3d 268, 276 (4th Cir. 2002) (citing 11A Charles Alan Wright, et al., *Fed. Prac. & Proc.*: Civil 2d § 2948.3 at 188 (West 1995) (stating that "[a]ll courts agree that plaintiff must present a prima facie case but need not show that he is certain to win")).  In this case, Dr. Jolly is essentially asserting a claim for breach of contract.  In general, to prevail on a claim for breach of contract, a plaintiff "must establish 'contractual obligation, breach, and damages.'"  *Due Forni LLC v. Euro Restaurant Solutions, Inc.*, PWG-13-3861, 2018 WL 4961653, at *5 (D. Md. Oct. 15, 2018) (citing *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Spec. Ct. App. 2011))); *see also U.S. v. Gypsum Co. v. Quigley Co. (In re G-I Holdings, Inc.)*, 755 F.3d 195, 202 (3d Cir. 2014).

Dr. Jolly asserts that he can show likelihood of success on the merits given that in depositions, Mr. Britton-Harr admitted that Coastal Labs has not made monthly installment payments on the Note.  (RDB-21-0137, ECF No. 107 at 19 (citing RDB-21-0137, ECF No. 108-1 at 33 *SEALED*).)  Courts have found likelihood of success on the merits in cases where the parties admit to the existence of a contract and the defendant does not deny his failure to pay on that contract.  *See, e.g.*, *Newlife Homecare Inc. v. Express Scripts, Inc.*, No. 3:07CV761, 2007 WL 1314861, at *7 (M.D. Pa. May 4, 2007).  Mr. Britton-Harr contends that despite Coastal Labs' admitted failure to make payments on the Note, Dr. Jolly cannot show a likelihood of success on the merits given that he has filed his own lawsuit in which he alleges fraud claims against Dr. Jolly predicated on his alleged inducement to enter the Agreement and Note at issue in this case.  (RDB-21-0137, ECF No. 113 *SEALED* at 15-16.)  Mr. Britton-Harr asserts that because this Court denied a motion to dismiss his Amended Complaint against Dr. Jolly, he has shown he possesses sufficient defenses to all of Dr. Jolly's claims.  (*Id.*)

Nevertheless, the undisputed record of facts developed in this case establishes transfers from the Coastal Labs and Provista accounts.  In *United States v. Lindsey*, the U.S. Court of Appeals for the Sixth Circuit affirmed a jury conviction for wire fraud, noting that the district court did not abuse its discretion in admitting an attorney's testimony that he had been unable to collect a judgment from the defendant years prior.  976 F.2d 734 (Table) (6th Cir. 1992). The Sixth Circuit noted that a defendant's movement of assets into the names of other persons in order to make himself judgment-proof is "relevant to show intent to defraud," and held that because of such probative value, the evidence is not inadmissible character evidence under

Federal Rule of Evidence 404(b). *Id.* at *4. Although Rule 404(b) generally prohibits a party from presenting evidence of "bad acts" when it is offered to prove character, the Rule also recognizes the "potentially probative value" of other-act evidence and provides that such evidence is admissible for "purposes other than character, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (citing Fed. R. Evid. 404(b)). Numerous courts have held that "[a] subsequent act, as well as a prior act, can be used to show intent under Rule 404(b)." *United States v. Hurley*, 755 F.2d 788, 790 (11th Cir. 1985); *see also United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) ("Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative of its admissibility.") (citing *Hurley*, 755 F.2d at 790).

Subsequent to the deterioration of relations between Mr. Britton-Harr and Dr. Jolly, Mr. Britton-Harr transferred more than $5,000,000 in assets from accounts in which Dr. Jolly asserts to have a security interest into the accounts of his other wholly owned companies not covered by the UCC Financing Statement. Just as "[i]t cannot be doubted that in appropriate circumstances, a consciousness of guilty may be deduced from evidence of flight" in the context of a criminal case, *United States v. Obi*, 239 F.3d 662, 665 (4th Cir. 2001), more than $5,000,000 in transfers from the accounts in which Dr. Jolly holds a security interest seem relevant to this Court's analysis of Dr. Jolly's likelihood of success in this case. Continued transfers during the parties' negotiations and submission of the Agreed Preliminary Injunction which ultimately prohibited such transfers provide further potential evidence of Mr. Britton-Harr's bad faith in these business dealings. This Court is satisfied that Dr. Jolly has shown

likelihood of success on his claims at this time, but this Court notes that such a holding "by no means represents a determination that the claim in question will or ought to succeed ultimately; that determination is to be made upon the 'deliberate investigation' that follows the granting of the preliminary injunction." *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 276 (4th Cir. 2002).

### C. Balance of Equities

"Moreover, in granting a preliminary injunction a court is guided not only by its assessment of the likely success of the plaintiff's claims, but also by other considerations, notably a balancing of likely harms." *Id.* (citing *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001)). Dr. Jolly asserts that while he will never be able to collect judgment on the Note if an injunction is not issued, there is no harm to Mr. Britton-Harr if such an injunction is issued. (RDB-21-0137, ECF No. 107 at 25.) Mr. Britton-Harr responded, arguing that Coastal Labs would in fact suffer harm if this Court granted Dr. Jolly's request, as it would force the company to breach its contracts with AMSOnSite, BHE, and Coastal Management. (RDB-21-0137, ECF No. 113 at 16 *SEALED*.) He argues that AMSOnSite, BHE, and Coastal Management were due and owed the more than $5,000,0000 paid and that those companies would be harmed by a return of the funds. (*Id.* *SEALED* (citing *Sato & Co. LLC v. Kodiak Fresh Produce LLC*, 334 F. Supp. 3d 1023, 1031 (D. Az. 2017) (considering the interests of a non-party and finding that the balance of equities weighed against granting injunctive relief because the interests of the third party were likely to be harmed).) However, as this Court has noted, Mr. Britton-Harr owns each of these companies in their entirety, and arguments that one of his wholly owned companies may breach its contract with another

wholly owned company do not tip the balance of the equities in his favor. The balance of the equities favors Dr. Jolly.

### D. Public Interest

For similar reasons, the public interest weighs in favor of a preliminary injunction. The public interest "favors requiring parties to abide by legitimate terms of their contracts, if not unreasonable." *ICENY USA, LLC v. M&M's, LLC*, 421 F. Supp. 3d 204, 223 (D. Md. 2019) (citing *NaturaLawn of America, Inc. v. West Group, LLC*, 484 F. Supp. 2d 392, 404 (D. Md. 2007) ("It is in the public interest to . . . enforce valid contracts.")). The Note applicable in this case provided Dr. Jolly with a security interest in the accounts of Coastal Labs and Provista, and it is in the public interest that he be able to enforce the prescribed remedy for breach of the Agreement and/or Note between himself and Coastal Labs if he prevails in this suit. The public interest weighs in favor of enforcement of the contract between Dr. Jolly and Coastal Labs, rather than those contracts between Mr. Britton-Harr's wholly owned entities.

Perhaps most significantly however, the public interest weighs in favor of granting Dr. Jolly his requested relied as there is a clear public interest in maintaining the status quo. Indeed, the "public interest prong has been equated with preserving the status quo until the merits can be fully considered by the trial court." *Wachovia Ins. Servs., Inc. v. Hinds*, No. WDQ-07-2114, 2007 WL 6624661, at \*9 (D. Md. Aug. 30, 2007) (citing *Maryland Undercoating Co. v. Paine*, 603 F.2d 477, 481 (4th Cir. 1979)); *see also U.S. ex rel. Rahman*, 198 F.3d at 492 (affirming district court's decision that "to serve the public interest, the status quo should be maintained during the pendency of the proceedings"). The parties have already acknowledged a need to maintain the status quo by filing the Agreed Preliminary Injunction approved by Judge Morgan. (RDB-

21-0137, ECF No. 93.)   Further, "[t]he principal function of a preliminary injunction is to maintain the status quo." *Pashby*, 709 F.3d at 319.  That is exactly what this Court seeks to do in this case.

## CONCLUSION

For the foregoing reasons and for the reasons set forth on the record, Mr. Britton-Harr, Coastal Labs, and BHE's oral Motion to Vacate is DENIED.   Mr. Britton-Harr individually and his wholly owned companies are specifically directed to take steps to preserve the status quo as originally intended by the United States District Court for the Eastern District of Louisiana.  Specifically, Mr. Britton-Harr, Coastal Labs, BHE, AMSOnSite, or any entity owned or control by Coastal Labs, BHE, AMSOnSite, or Mr. Britton-Harr individually, will be required to place $2,230,000 cash in the Registry of this Court or post a $2,230,000 corporate surety bond in that amount, or otherwise secure $2,230,000 in funds to satisfy any judgment potentially entered in this case.

A Separate Order follows.

Dated: April 23, 2021 _____/s/_____

Richard D. Bennett
United States District Judge

24