IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COASTAL LABORATORIES, INC., *et al.*, | * | |
| | * | |
| Plaintiffs, | * | Civil Action No. RDB-20-2227 |
| v. | * | |
| TARUN JOLLY, M.D., *et al.*, | * | |
| | * | |
| Defendants. | * | |

| | | |
|---|---|---|
| TARUN JOLLY, M.D., | * | |
| Plaintiff, | * | Civil Action No. RDB-21-0137 |
| v. | * | |
| COASTAL LABORATORIES, INC. *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

These consolidated cases involve competing claims of Patrick Britton-Harr ("Mr. Britton-Harr") and Dr. Tarun Jolly ("Dr. Jolly") and the corporate entities respectively owned and controlled by them. The dispute arises out of the purchase of two infectious disease testing laboratories in Arizona pursuant to a purchase agreement. Dr. Jolly filed a Complaint on August 12, 2020 in the United States District Court for the Eastern District of Louisiana, asserting various claims against Defendants Coastal Laboratories, Inc. ("Coastal Labs"), as

1

well as Britton-Harr Enterprises, Inc. ("BHE"), and Mr. Britton-Harr arising out of Coastal Lab's purchase of the two laboratories. *See Jolly v. Coastal Laboratories, Inc.*, Civ. No. 20:2230 (E.D. La. 2020); *see also* (RDB-21-0137, ECF No. 1.) Upon transfer of the case to this Court, the matter was consolidated with a suit filed by Coastal Labs, owned entirely by Mr. Britton-Harr, and another company owned in part by Mr. Britton-Harr, AMSOnSite, Inc. ("AMSOnSite"), against Dr. Jolly and other individuals as well as companies owned by Dr. Jolly and the other individually-named defendants. (*See Coastal Labs. v. Jolly*, RDB-20-2227, ECF No. 37.)

On May 12, 2021, Dr. Jolly filed an Amended Complaint against Mr. Britton-Harr, BHE, and Coastal Laboratories, as well as AMSOnSite, Coastal Management Group, Inc. ("Coastal Management"), and Provista Health, LLC ("Provista"). (RDB-20-2227, ECF No. 90.) Presently pending is a partial Motion to Dismiss filed by Mr. Britton-Harr. (RDB-20-2227, ECF No. 95.) Mr. Britton-Harr seeks dismissal of Count Four of the Amended Complaint, which alleges a claim for fraudulent inducement against him. (*Id.*) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Motion to Dismiss Count Four of Dr. Tarun Jolly's Amended Complaint (RDB-20-2227, ECF No. 95) is DENIED.

## BACKGROUND

In ruling on the partial Motion to Dismiss, this Court accepts as true the facts as alleged by Dr. Jolly. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). On August 12, 2020, Dr. Jolly, a resident of Louisiana, filed suit against Coastal Labs, BHE, and Britton-Harr, seeking to collect amounts allegedly due under a promissory note and guaranty, as well as

recognition of the validity and enforceability of a Uniform Commercial Code ("UCC") financing statement and certain security interests. (RDB-21-0137, ECF No. 1.) Coastal Labs and BHE are Delaware corporations with their principal places of business in Maryland. (RDB-20-2227, ECF No. 90 ¶¶ 3-4.) Mr. Britton-Harr is a resident of Maryland. (*Id.* ¶ 2.) The Amended Complaint is now the operative pleading in this matter. (RDB-20-2227, ECF No. 90.)

On March 18, 2020, Dr. Jolly and Mr. Britton-Harr, on behalf of his wholly-owned corporation, Coastal Labs, executed the Membership Interest Purchase Agreement (the "Agreement") by which Coastal Labs agreed to pay $3,000,000 to acquire Dr. Jolly's sole membership interest in two entities, Provista Health, LLC ("Provista") and Integra Molecular, LLC ("Integra"). (*Id.* ¶ 11; *see also* RDB-21-0137, Agreement, ECF No. 1-2.) On March 18, 2020, the parties also signed a Secured Promissory Note and Pledge Agreement (the "Note"), by which Coastal Labs agreed to pay Dr. Jolly the $3,000,000 within one year of the execution of the Agreement. (RDB-20-2227, ECF No. 90 ¶ 12; *see also* RDB-21-0137, Note, ECF No. 1-2.) This Note, including the payment and performance in full of all the obligations of Coastal Labs thereunder, was secured by, among other things, all assets of Coastal Labs, Provista, and Integra,[1] as reflected in a UCC Financing Statement in favor of Dr. Jolly. (RDB-20-2227, ECF No. 90 ¶ 20; *see also* RDB-21-0137, Financing Statement, ECF No. 1-3.) The Agreement and the Note are each unconditionally and irrevocably guaranteed by BHE, one of several business wholly owned by Mr. Britton-Harr, who did not personally guarantee the Agreement and the

---

[1] By execution of the Agreement, Coastal Labs became the sole owner of both Provista and Integra. (RDB-21-0137, ECF No. 1-2; RDB-21-0137, ECF No. 108-1 at 119 *SEALED*.) As noted above, Coastal Labs is wholly owned by Mr. Britton-Harr.

3

Note. (RDB-20-2227, ECF No. 90 ¶ 23.) However, as the President and Chief Executive Officer ("CEO") of BHE, Mr. Britton-Harr executed the "Certificate of President & CEO of Britton-Harr Enterprises, Inc.," hereinafter referred to as the "Guarantor Certificate," and thereby certified in his individual capacity that:

> (a) The fair saleable value of the assets of Guarantor exceeds the amount that will be required to be paid on or in respect of the [sic] its existing debts and other liabilities . . . , (c) the current cash flow of Guarantor, together with the proceeds Guarantor would receive were it to liquidate all of its assets, and after taking into account all anticipated uses of the cash, are (and at all times, shall remain) sufficient to (i) pay all amounts on or in respect of its debt when such amounts are required to be paid . . ., and (d) Guarantor shall not, directly or indirectly, take any action that would impair its ability to (i) pay its debts from time to time as such debts mature, or (ii) satisfy and timely perform its obligations pursuant to the Guaranty, including without limitation, guarantee to Seller the timely payment and performance by Purchaser of its covenants, agreements and other obligations set forth in the Purchase Agreement (including without limitation, payment of the Purchase Price pursuant to the Promissory Note)."

(RDB-21-0137, Guarantor Certificate ¶ 2, ECF No. 1-2.)

Under the Note, a series of specifically delineated actions and/or inactions independently constituted "Events of Default." (RDB-20-2227, ECF No. 90 ¶ 26.) These Events of Default included, *inter alia*, (1) defaults in the payment of principal, interest, or any other amount under the Note when due (whether at stated maturity or upon acceleration) and unremedied for three (3) days; (2) any materially false, misleading, incomplete, or untrue representations or warranties made by Coastal Labs under the Note or the Agreement or any certificate, exhibit, or other document required thereunder; (3) transfers of possession of or other disposals of material assets that are collateral; and (4) breaches of any covenant, term, agreement or condition contained in the Note or Purchase Agreement. (*Id.*)

Over the next few months following the execution of the Agreement and Note, relations between Mr. Britton-Harr and his companies and Dr. Jolly deteriorated. On July 31, 2020, Coastal Labs and AMSOnSite filed suit in this Court against Dr. Jolly and others alleging tortious interference with business relations, tortious interference with economic relations, civil conspiracy, unfair competition, and fraud with respect to Coastal Labs' efforts to acquire medical testing laboratories to assist their infection control management program designed for nursing homes. (RDB-20-2227, ECF No. 1.) In the now operative Amended Complaint, Mr. Britton-Harr alleges, in part, that Coastal Labs had no "Gross Collections" in March, April, and May 2020 due to the nonperformance of a company, Z DiagnostiX, LLC ("ZDX"), which was allegedly supposed to supply certain management software. (RDB-20-2227, Amended Complaint, ECF No. 13 at ¶ 46.) Mr. Britton-Harr alleges that such nonperformance was part of a scheme by Dr. Jolly and his associates to sabotage Coastal Labs' business and steal its customers. (*Id.* at ¶ 74.) On November 23, 2020, this Court denied Dr. Jolly and his co-Defendants' motion to dismiss in that case. (RDB-20-2227, ECF Nos. 21, 22.)

On August 12, 2020, Dr. Jolly filed his own suit against Coastal Labs, BHE, and Mr. Britton-Harr individually. (RDB-21-0137, ECF No. 1.) In his Complaint, Dr. Jolly alleged that Coastal Labs' actions and/or inactions triggered several independent "Events of Default" under the terms of the Note and Agreement. (*Id.* ¶ 24.) Specifically, Jolly alleged that Coastal Labs had: (1) failed to make payments on the Note; (2) improperly transferred material assets, including furniture, fixtures, and equipment of Coastal Labs and/or Provista and Integra; (3) failed to keep records concerning collateral as required; (4) failed to provide prompt written notice of any and all events of default; (5) failed to timely permit inspection of the required

books and records; and (6) failed to notify Dr. Jolly of events that could result in a material adverse effect on the business, operations, or financial condition of Coastal Labs or Provista and Integra. (*Id.* ¶ 25.)

On November 12, 2020, Dr. Jolly filed a motion for a temporary restraining order, amended later that same day, requesting access to Coastal Labs' books and records in order to confirm that Coastal Labs had sufficient assets to pay damages for any judgment that might be entered against it. (RDB-21-0137, ECF Nos. 26, 29.) That request was denied by Judge Morgan of the Eastern District of Louisiana. (RDB-21-0137, ECF No. 123.) However, Judge Morgan allowed Dr. Jolly to amend his request for relief and granted expedited discovery on the issue. (RDB-21-0137, ECF No. 86.) Through discovery, Dr. Jolly found that Mr. Britton-Harr had made several large transfers in cash collateral, in which Dr. Jolly had a security interest, out of Coastal Labs' and Provista's bank accounts into the accounts of BHE, AMSOnSite, and Coastal Management.[2] (RDB-20-2227, ECF No. 90 ¶ 30.)

Dr. Jolly alleges that since March 18, 2020, $430,000 has been transferred by Coastal Labs to BHE; $197,000 from Provista to BHE; $2,464,003 from Coastal Labs to AMSOnSite; $2,186,000 from Coastal Labs to Coastal Management; and $198,000 from Provista to Coastal Management. (*Id.* ¶¶ 31-34.) Dr. Jolly contends that none of these transfers were made in the ordinary course of business or for legitimate business expenses, while Mr. Britton-Harr asserts that the transfers were repayments for undocumented loans and marketing services rendered under contracts between his companies. (*Id.* ¶¶ 45-46.) Dr. Jolly notes that Mr. Britton-Harr

---

[2] It is undisputed that Coastal Management is a corporation wholly owned by Mr. Britton-Harr. (*See* RDB-20-2227, ECF No. 68 at 4; ECF No. 90 ¶ 5.) Although the parties previously represented that AMSOnSite was also wholly owned by Mr. Britton-Harr, (RDB-21-0137, ECF No. 108 at 101 *SEALED*), Dr. Jolly now alleges that Mr. Britton-Harr was a 50% owner of AMSOnSite, and Mr. Britton-Harr does not dispute such allegation, (RDB-20-2227, ECF No. 90 ¶ 84).

and his companies have been unable to produce any documents, such as invoices, work orders, or purchase orders that reflect what marketing services were rendered, identify individuals who performed any marketing services, or correlate the total amounts transferred to contracts which established a "monthly service rate" of $4,500 per long-term care facility serviced. (*Id.* ¶ 46.)

On December 4, 2020, Dr. Jolly filed the Second Motion for Preliminary Injunction, asking for certain "status quo" relief and affirmatively requesting that money be transferred from recipient parties back to Coastal Labs. (RDB-21-0137, ECF No. 71.) Judge Morgan ultimately signed an Agreed Preliminary Injunction Order submitted by the parties, which enjoined Coastal Labs, Provista, and Integra from making monetary transfers to Mr. Britton-Harr individually, BHE, AMSOnSite, Coastal Management, or any other companies in which Mr. Britton-Harr had an equity or ownership interest. (RDB-21-0137, ECF No. 93.) It also generally limited Coastal Labs and other Britton-Harr companies from making larger payments and transfers and generally ordered that Coastal Labs, BHE, and Mr. Britton-Harr were enjoined from disposing, destroying, transferring, or otherwise encumbering Dr. Jolly's collateral as defined by the UCC Financing Statement. (*Id.*) The parties did not come to an agreement on the issue of whether money transferred out of the Coastal Labs and Provista accounts should be returned to those accounts or otherwise secured. This case was transferred to this Court before Judge Morgan could rule on the issue.

Upon review of the memoranda submitted by the parties in the Eastern District of Louisiana (RDB-21-0137, ECF Nos. 107, 113 *SEALED*, 119, 126 *SEALED*), and having heard arguments on counsel on the matter (ECF No. 20-2227, ECF No. 50), this Court held

7

on March 10, 2021 that Dr. Jolly should be granted his requested relief to ensure the maintenance of the status quo in this matter pending the resolution of the parties' claims. (RDB-20-2227, ECF No. 49.) Accordingly, this Court ordered that Coastal Labs, BHE, or Mr. Britton-Harr individually must place $3,000,000 in the Registry of this Court or post a $3,000,000 corporate surety bond in that amount. (*Id.*) On March 26, 2021, this Court modified its original order, ordering that the amount required to be posted be reduced to $2,230,000 on the basis of alleged payments made by Coastal Labs under the Note and equipment allegedly owned by Coastal Labs being held as collateral by Dr. Jolly. (RDB-20-2227, ECF No. 56.) After numerous hearings and calls related to continued noncompliance with such Orders, this Court held on April 20, 2021 that entry of the March 10 Order was appropriate, and that Mr. Britton-Harr, Coastal Labs, BHE, AMSOnSite, or any entity owned or controlled by Coastal Labs, BHE, AMSOnSite, or Mr. Britton-Harr individually, will be required to place $2,230,000 cash in the Registry of this Court or post a $2,230,000 corporate surety bond in that amount, or otherwise secure $2,230,000 in funds to satisfy any judgment potentially entered in this case. (RDB-20-2227, ECF No. 78.)

On May 12, 2021, Dr. Jolly filed an Amended Complaint against Mr. Britton-Harr, Coastal Labs, and BHE, as well as Coastal Management[3], AMSOnSite[4], and Provista[5], adding to the Complaint numerous allegations related to the allegedly fraudulent transfers from Coastal Labs and Provista to BHE, AMSOnSite, and Coastal Management. (RDB-20-2227,

---

[3] Coastal Management is a California corporation with its principal place of business in Maryland. (RDB-20-2227, ECF No. 90 ¶ 5.)
[4] AMSOnSite is a Delaware corporation with its principal place of business in Maryland. (RDB-20-2227, ECF No. 90 ¶ 6.)
[5] Provista is a Maryland limited liability company with its principal place of business in Maryland. (RDB-20-2227, ECF No. 90 ¶ 7.)

8

ECF No. 90.) Dr. Jolly now alleges that Coastal Labs and Provista were either insolvent at the time of the transfers, or were rendered insolvent as a result of the transfers. (*Id.* ¶ 50.) Dr. Jolly asserts that Coastal Labs has ceased business operations, and as such, there will be no more income generated by Coastal Labs' business—the only assets remaining are the company's accounts receivables which includes only $1,527,261.22 in assets, "the lion's share of which have yet to be realized." (*Id.* ¶ 51.) The Amended Complaint alleges that Dr. Jolly is entitled to a Judgment against Coastal Labs, the maker of the Note and Agreement, as well as Mr. Britton-Harr personally for the full amount due on the Note (Count One); a Judgment against Coastal Labs that recognizes the validity and enforceability of security interests in the Collateral and corresponding Financing Statement to secure the Note and Judgment (Count Two); and a Judgment against BHE and Mr. Britton-Harr in the amount equal to the balance on the Note (Count Three). (*Id.* ¶¶ 52-68.) The Amended Complaint also asserts a claim for fraudulent inducement against Mr. Britton-Harr (Count Four) and three claims against all parties named as Defendants by Dr. Jolly, Coastal Labs, Provista, Coastal Management, BHE, AMSOnSite, and Mr. Britton-Harr: avoidance and recovery of actual fraudulent transfers (Count Five); avoidance and recovery of constructively fraudulent transfers (Count Six); and annulment and recovery of transfers against all Defendants (Count Seven). (*Id.* ¶¶ 75-128.)

Mr. Britton-Harr now moves to dismiss Count Four of the Amended Complaint which alleges a claim for fraudulent inducement against him. (RDB-20-2227, ECF No. 95.) Dr. Jolly opposes the dismissal. (RDB-20-2227, ECF No. 96.)

**STANDARD OF REVIEW**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

308, 322 (2007)). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

**ANALYSIS**

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Maryland generally adheres to the rule of *lex loci contractus*, under which the construction of a contract is determined by the law of the state where the contract was made. *See Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). Meanwhile, "[i]n cases sounding in tort . . . , Maryland applies the venerable maxim of *lex loci delicti*." *Harvard v. Perdue Farms, Inc.*, 403 F. Supp. 2d 462, 466 (D. Md. 2005) (citations omitted). "Under this rule, the substantive tort law of the state where the wrong occurs governs." *Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 414 (D. Md. 2011) (citation and internal quotation marks omitted). The parties to this litigation have briefed the issue of fraudulent inducement under Louisiana law. (RDB-20-2227, ECF Nos. 96, 104.) Dr. Jolly, however, noted that he was not taking a position on the issue of whether Louisiana law does

11

in fact apply and retains the right to argue that Delaware, Maryland, or some other state's law should apply. (RDB-20-2227, ECF No. 96 at 6 n.7.)

To state a claim for fraudulent inducement under Louisiana law, a plaintiff must allege "(1) a misrepresentation of a material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *See Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008) (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999)). The elements of a claim for fraudulent inducement under Maryland and Delaware are substantially similar. *See Lawley v. Northam*, No. ELH-10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011) (citing *Lapides v. Trabbic*, 758 A.2d 1114, 1122 (Md. Ct. Spec. App. 2000)); *Sofregen Medical Inc. v. Allergan Sales, LLC*, No. N20C-03-319 EMD CCLD, 2021 WL 1400071, at *2 (Del. Super. Ct. Apr. 1, 2021) (citing *Arby Partners V., L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006)).

Regardless of the applicable state law, a plaintiff's fraud claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See US Fire Pump Company, LLC v. Alert Disaster Control (Middle East) Ltd.*, No. 19-335-SDD-EWD, 2021 WL 296073, at *18 (M.D. La. Jan. 28, 2021) (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008)). "A party claiming fraud must 'state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* (citing Fed. R. Civ. P. 9(b)). In cases where "facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge," the Rule 9(b) pleading requirements "may to some extent" be "relaxed." *Id.* (citing *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (internal citation omitted)).

However, "'[a]t a minimum,'" Rule 9(b) "'requires allegations of the particulars of the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *Benchmark Elec., Ins. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003)).

In this case, Dr. Jolly alleges that on the date that Mr. Britton-Harr executed the Guarantor Certificate he intentionally made knowingly false and/or deceptive certifications to Dr. Jolly for the purposes of inducing him to enter into the Agreement and issuing the Note. (RDB-20-2227, ECF No. 90 ¶ 70.) The knowingly false certifications include all those made in Paragraph 2 of the Guarantor Certificate quoted above. (*Id.* (citing RDB-21-0137, Guarantor Certificate, ECF No. 1-2 ¶ 2).) That paragraph generally certified that BHE's assets exceeded its debts and liabilities; BHE was not undercapitalized; BHE had sufficient cash flow to pay its debts; and that BHE would not take any action that would impair its ability to continue to pay its debts or otherwise satisfy its obligations under the Guaranty. (*Id.*) Pursuant to that Certificate, Mr. Britton-Harr further acknowledged that he understood that Dr. Jolly was "relying on the truth and accuracy" of the statements within the related transaction documents. (*Id.* ¶ 71 (citing Guarantor Certificate, ECF No. 1-2 ¶ 3).)

Dr. Jolly alleges that Mr. Britton-Harr knew that the certifications were false at the time he made them, pointing to his allegations related to the alleged sham transfers made by Britton-Harr out of the Coastal Labs and Provista accounts to the accounts of his other wholly and partially owned companies. (*Id.* ¶¶ 31-35.) Dr. Jolly alleges that he began moving his money less than a month after executing the Agreement and Note, and by extension the Guarantor

13

Certificate. (*Id.* ¶¶ 11, 34.) Dr. Jolly also notes that Coastal Labs is now in default under the Note and Agreement and that BHE has been unable to make payments to Dr. Jolly as the Guarantor. (*Id.* ¶¶ 27-29, 38-39.) Of the $3 million amount initially due under the Note, $2,439,327.57 plus interests and fees still remains unpaid. (*Id.* ¶¶ 11, 19.) Dr. Jolly generally contends that Mr. Britton-Harr made the "sham" transfers with the intent to render BHE insolvent, undermining the entire purpose of the Guaranty to "unconditionally and irrevocably guarantee[ ] to [Dr. Jolly] the timely payment and performance" of the Note and Agreement terms. (*Id.* ¶¶ 38-39; RDB-20-0137, Guaranty § 4.12, ECF No. 1-2.) Although Mr. Britton-Harr alleges that the transfers were made in the ordinary course of business as repayments on undocumented loans and other payments for marketing services contracts between his companies, Dr. Jolly notes that Mr. Britton-Harr has been unable to provide any specific details related to the marketing services provided by the companies nor correlate the amounts transferred to the purported contract terms. (RDB-20-2227, ECF No. 90 ¶ 46.) The gravamen of Dr. Jolly's claim in Count Four is that Mr. Britton-Harr executed the Guarantor Certificate knowing that he intended to drain BHE of assets, making the company insolvent and unable to act as Guarantor to the Agreement.

Such allegations are sufficient to state a plausible claim for fraudulent inducement. The Amended Complaint clearly alleges the time, place, contents, and identity of the representations at issue. (*Id.* ¶ 70.) The Guarantor Certificate has been provided to this Court as an attachment to the original Complaint, (RDB-21-0137, Guarantor Certificate, ECF No. 1-2), and it is clearly alleged that Mr. Britton-Harr personally signed the document and made the allegedly false representations, (RDB-20-2227, ECF No. 90 ¶¶ 70-71). Dr. Jolly has also

14

alleged what Mr. Britton-Harr "obtained" by making the allegedly false representations: the execution of the sale. (*Id.* ¶¶ 70-72.)

It is true that "generally, there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed." *See Willard*, 336 F.3d at 386. However, "where substantial nonperformance is coupled with other probative factors, . . . an intent not to perform when the promise was made may, in appropriate circumstances, be properly inferred." *Id.* In *US Fire Pump*, the United States District Court for the Middle District of Louisiana recently denied a motion to dismiss a claim for fraudulent inducement where the plaintiff alleged that the defendants had promised to pay for certain equipment and promptly failed to perform. 2021 WL 296073, at *19-*20. The court noted that the non-performance occurred shortly after execution of the relevant contract, the non-performance was substantial, and the defendants' arguments that their non-performance was the result of a change in circumstances were without any factual support. *Id.* As the court explained, "there [were] simply no allegations to suggest that there was a change in circumstances between" the time the parties executed the contract and the defendant's nonperformance "that could explain [the defendant] backing out of the alleged contract," which "le[d] to the inference that [the defendant] never intended to perform, as Plaintiff alleges." *Id.* at *20.

Quite simply, at this stage in the litigation, this Court is mindful that all inferences must be drawn in favor of the Plaintiff, and that the Plaintiff's version of the facts is accepted as true unless entirely unsubstantiated. *US Fire Pump*, 2021 WL 296073, at *20. Dr. Jolly has alleged that Mr. Britton-Harr certified that he would maintain BHE's accounts such that BHE

would have sufficient funds to serve as the Guarantor of the Agreement and Note and that soon after that certification, Mr. Britton-Harr began moving funds between his wholly and partially owned companies. Mr. Britton-Harr's allegations that the movement of the funds was for repayment of undocumented loans or payment on marketing services contracts lack factual support at this time. "Reading the facts and law generously," *id.* at *20, this Court is satisfied that Dr. Jolly has stated a plausible claim that Mr. Britton-Harr never intended to perform as he certified.

## CONCLUSION

For the reasons set forth above, the pending Motion to Dismiss Count Four of Dr. Tarun Jolly's Amended Complaint (RDB-20-2227, ECF No. 95) is DENIED.

A separate Order follows.


Dated: July 15, 2021                                /s/

                                                                       Richard D. Bennett
                                                                       United States District Judge